[Cite as *In re L.B.*, 2025-Ohio-2269.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| L.B. and L.B. | : | Hon. Andrew J. King, J. |
| | : | Hon. Robert G. Montgomery, J. |
| Minor Children | : | |
| | : | Case No. 2024CA00190 |
| | : | Case No. 2024CA00191 |
| | : | Case No. 2024CA00192 |
| | : | |
| | : | |
| | : | O P I N I O N |
| | : | |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Common Pleas Court, Family Court - Juvenile Division, Case Nos. 2023JCV00299, 2023JCV00300, and 2024JCV00736 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT: | June 26, 2025 |

APPEARANCES:

For Appellee JFS

JAMES B. PHILLIPS
STARK COUNTY DEPARTMENT OF
 JOB AND FAMILY SERVICES
402 2nd Street, SE
Canton, OH 44702

For Appellant Mother J.C.

D. COLEMAN BOND
116 Cleveland Ave., NW
Suite 600
Canton, OH 44702

For Grandmother Tracey E.

ROBERT G. ABNEY
116 Cleveland Ave., NW
Suite 500
Canton, OH 44702

*Montgomery, J.*

## STATEMENT OF THE FACTS AND THE CASE

**{¶1}** L.B. (girl) and L.B. (boy) are fraternal twins born on November 22, 2019, to Mother J.C. ("Appellant") and Father L.B. ("Father"). Both children have special needs.

**{¶2}** L.B. (girl) has been diagnosed with developmental delay, prematurity, speech and language disorder, and disruptive behavior. She is also being tested for Autism. *Trial Transcript*, p. 37. L.B. (girl) receives speech and occupational therapy, sees a primary care provider, developmental pediatrics, and an ophthalmologist. *Id.*

**{¶3}** L.B. (boy) has been diagnosed with autism, prematurity, hypotonia, global developmental delay, gait abnormality, vision abnormality, speech disorder and language disorder. *Id.,* p.36. L.B. (boy) receives speech, occupational and feeding therapy. He also sees a primary care provider, developmental pediatrics, neurology and podiatry. Id.

**{¶4}** Tracey E. ("Grandmother") is the maternal grandmother of the children. Grandmother resides in New Jersey with her partner of twenty years; Thomas D. *Id.,* p. 255. Grandmother completed a home study and was approved as a possible placement for the children. *Id.*, p. 274.

**{¶5}** Stark County Department of Job and Family Services ("SCDJFS") filed a complaint in August 2022, and the children were placed in the temporary custody of SCDJFS. SCDJFS placed the children with foster parents C.W. and JW. The children were returned to Appellant in November 2022. SCDJFS stayed involved with the family on a non-court basis. While the children were in Appellant's care, she would frequently ask C.W. and J.W. to assist with the care of them. C.W. and J.W. would take the children

to doctor's appointments, pick them up from school and keep them overnight. *Trial Transcript*, pp. 233, 234.

{¶6} On March 17, 2023, Appellant failed to get the children off the bus and police were called. SCDJFS filed a complaint on the same day alleging neglect and dependency. A shelter care hearing was held and the children were placed into the emergency temporary custody of SCDJFS. SCDJFS placed the children back into the care of C.W. and J.W. The trial court filed a Judgment Entry on June 14, 2023, finding the children to be dependent. SCDJFS completed a case plan for each child that stated they did not have Indian heritage. Appellant signed the case plans, and they were adopted by the trial court on September 15, 2023. The trial court conducted review hearings every six months and the children remained in the temporary custody of SCDJFS and in the home of C.W. and J.W.

{¶7} C.W. and J.W. filed a Motion to Intervene and for Legal Custody of the children on February 15, 2024.

{¶8} Grandmother filed a Complaint for Legal Custody for each of the children on July 9, 2024.

{¶9} Appellant filed a Motion for Change of Legal Custody of the children to Grandmother on July 10, 2024.

{¶10} SCDJFS filed a Motion Requesting Permanent Custody on July 23, 2024.

{¶11} The trial court heard the Motion Requesting Permanent Custody filed by SCDJFS, Motion for Legal Custody filed by C.W. and J.W., Motion for Legal Custody filed by Grandmother and Motion for Change of Legal Custody filed by Appellant on October 24, 2024.

{¶12} The trial court issued Findings of Fact and Conclusions of Law and a Judgment Entry on November 5, 2024, denying the motions for legal custody, denying the complaint for legal custody and granting SCDJFS's motion for permanent custody.

{¶13} Pursuant to Loc. App.R. 12, this Court granted a motion to consolidate case nos. 2024CA00190, 2024CA00191 and 2024CA00192. In that Order, this Court stated the controlling case number would be 2024CA00190 and that all future pleadings shall show all case numbers with the controlling case number listed first. See, *Consolidation Order,* filed January 8, 2025.

{¶14} Appellant filed a timely appeal and asserts two Assignments of Error:

{¶15} "I. THE TRIAL COURT ERRED IN FINDING THAT PERMANENT CUSTODY WAS IN THE BEST INTERESTS OF THE MINOR CHILDREN AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."

{¶16} "II. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO CONDUCT THE INQUIRIES DICTATED BY THE INDIAN CHILD WELFARE ACT (ICWA) AS FOUND IN 25 U.S.C. 1911."

## ANALYSIS

{¶17} Appellant argues in her first assignment of error "The Trial Court erred in terminating Mother's parental rights and finding that permanent custody was in the best interests of the minor children." *Appellant Brief,* p. 13. We disagree.

{¶18} The Ohio Supreme Court has held that before a trial court grants permanent custody of a minor to a state agency "[t]he court must find by clear and convincing evidence (1) that one or more of the conditions in R.C. 2151.414(B)(1)(a) through (e) applies and (2) that a grant of permanent custody is in the child's best interest." *In re A.M.*, 2020-Ohio-5102, ¶ 18.

**{¶19}** Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established". *Cross v. Ledford,* 161 Ohio St. 469, ¶ 7 (1954). Also see, *In re Adoption of Holcomb,* 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* at 477.

**{¶20}** When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed, and a new trial ordered. *In re Z.C.,* 2023-Ohio-4703, ¶ 14.

**{¶21}** In this appeal, Appellant cites R.C. 2151.414(B)(1) in her brief but only argues that that permanent custody was not in L.B.'s best interest pursuant to R.C. 2151.414(D). Appellant has not challenged the trial court's finding that under R.C. 2151.414(B)(1)(a), "[t]he child cannot be placed with either parent within a reasonable time or should not be placed with either parent within a reasonable time." *Judgment Entry*, p. 1. Therefore, we are only concerned with the juvenile court's determination that "It is in the best interest of L.B. (sic), born November 22, 2019, that permanent custody be granted to the Stark County Department of Jobs and Family Services." *Id.*

{¶22} "R.C. 2151.414(D)(1) requires that a juvenile court, in determining whether a grant of permanent custody is in the best interest of the child, 'consider' all relevant factors, including the five factors listed in R.C. 2151.414(D)(1)(a) through (e)." *In re A.M.*, ¶ 24.

{¶23} The R.C. 2151.414(D)(1) factors include:

(a)     The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b)     The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c)     The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period,   * * *;

(d)     The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e)     Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶24} "R.C. 2151(D) is written broadly and requires the juvenile court judge to consider all factors that are relevant to the best interests of the child. The purpose of a far-reaching inquiry is to allow the judge to make a fully informed decision on an issue as important as whether to terminate parental rights, privileges and responsibilities. The

discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re AWKAL*, 95 Ohio App.3d. 309 (8th Dist.1994).

**{¶25}** Appellant cites in her brief that "[t]he trial court failed to consider R.C. 2151(D)(1)(d) when making its decision as to the best interests of the minor child." *Appellant Brief*, p. 15. We disagree.

**{¶26}** The Judgment Entry filed in the trial court on November 5, 2024, states, "The Findings of Fact and Conclusions of Law that were filed at the same time as this entry are hereby incorporated in this entry as if fully rewritten herein." *Judgment Entry*, p. 1.

**{¶27}** The Findings of Fact and Conclusions of Law filed on the same date as the trial court's Judgment Entry found, "L.B. has a bond with Mother. However, any detriment which may occur by severing any bond would be outweighed by the benefits of permanency for this child." *Findings of Fact and Conclusions of Law*, p. 3.

**{¶28}** The trial court also found, "The grandmother has been involved with the children as much as is possible given the distance between her home and Stark County. She was present for their birth. She makes a point of spending time with the grandchildren during visits on birthdays, some holidays, and Mother's Day." *Id.*, p. 10.

**{¶29}** The trial court further found, "The children and the Wilsons are bonded. The children look to them for support, love, affection and have all of their needs met. The interaction between the Wilsons and children is loving." *Id.*, p. 14.

**{¶30}** This Court finds that the trial court considered R.C.2151(D)(1)(d) in making its decision as to the best interests of the minor children.

**{¶31}** Appellant takes issue with the trial court's finding that "An award of legal custody would maintain Mother's residual parental rights which would limit the Wilson's ability to make decisions in the best interests of the children. An award of legal custody would also not preclude a future legal challenge by the <u>M</u>other (sic) for a return of custody. Such would be contrary to the children's best interests because of their need for permanency." *Id.*, p. 15. Appellant cites 2151.42(B) as authority for her argument that, "[t]he trial court's findings as cited above are contrary to law." *Appellant Brief*, p. 16.

**{¶32}** R.C.2151.42(B)(1) states, "At any hearing in which a court is asked to modify or terminate an order of disposition issued under section 2151.353, 2151.415, or 2151.417 of the Revised Code, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child." R.C. 2151.42(B) states "An order of disposition issued under division (A)(3) of section 2151.353, division (A)(3) of section 2151.415, or section 2151.417 of the Revised Code granting legal custody of a child to a person is intended to be permanent in nature."

**{¶33}** Appellant argues that, "The mere fact that Mother could seek custody of the minor children in the future does not eliminate the fact that a grant of legal custody is intended to be permanent in nature, as that is a potential in nearly every action where there is a grant of legal custody." *Appellant Brief*, p. 17.

**{¶34}** Although legal custody is "intended" to be permanent in nature, it is in fact not permanent. However, the granting of a permanent custody order is permanent.

**{¶35}**     R.C.2151.011 defines permanent custody as "a legal status that vests in a public children services agency or private child placing agency all parental rights, duties and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of any and all parental rights, privileges, and obligations, including all residual rights and obligations."

**{¶36}** The record demonstrates that there was clear and convincing evidence before the trial court from which it could conclude that permanent custody was in L.B.'s best interest. The trial court did not abuse its discretion or otherwise err in denying legal custody to Grandmother. Consequently, the trial court did not err in terminating the parents' parental rights or in placing the children in the permanent custody of SCDJFS.

**{¶37}**     The final argument Appellant makes in her first assignment of error is, "[t]he guardian ad litem did not testify at trial nor was the Guardian ad Litem Report filed on October 21, 2014, ever offered or admitted into evidence." *Appellant Brief*, p. 17. Appellant argues that the trial court erred by "improperly relying on information contained within the Guardian ad Litem Report in its Findings of Facts and Conclusions of Law, when this evidence was not in the record." *Id.*

**{¶38}**     The trial court judge addressed the guardian ad litem in open court, "I have read your report. Is there anything you'd like to add to it today?" *Trial Transcript*, p. 304. The guardian ad litem then made a statement to the trial court. *Id.*, pp. 305, 306. Appellant's counsel did not object to the trial court's reference to the guardian's report, nor did he object to the guardian's statement nor cross examine him.

**{¶39}** Appellant fails to cite in her brief any statutes or case law upon which her argument relies.

**{¶40}** Appellate Rule 16 (A)(7) states that an Appellant's brief must contain, "An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

**{¶41}** This court has held that, "It is not the duty of an Ohio appellate court to create arguments for the parties and search the record for evidence to support them." *Washek v. Washek*, 2019-Ohio-1504, ¶ 21 (5th Dist.).

**{¶42}** After reviewing Appellant's arguments contained in her first assignment of error, this Court finds the trial court did not lose its way or create such a manifest miscarriage of justice that the trial court's judgment filed on November 5, 2024, must be reversed and a new trial ordered. This Court finds that Appellant's first assignment of error is without merit and her first assignment of error is overruled.

**{¶43}** Appellant argues in her second assignment of error that the trial court committed plain error when it failed to conduct the inquiries dictated by the Indian Child Welfare Act (ICWA) as found in 25 U.S. 1911.

> The Indian Child Welfare Act ("ICWA") was enacted "for the protection and preservation of Indian tribes and their resources." *25 U.S.C.A. 1901(2).* Congress was concerned that "an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies". *25 U.S.C.A. 1901(4).* Congress acknowledged, "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children and that the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe". *25 U.S.C.A. 1901(3).*

The Code of Federal Regulations states, "State courts must ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child. The inquiry is made at the commencement of the proceeding and all responses should be on the record. State courts must instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." *25 C.F.R. 23.107*.

**{¶44}** The Act applies to an "Indian child" that means "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." *25 U.S.C.A. 1903(4).* We note Appellant does not argue to this court that the minors are Indian children or eligible for membership in a tribe. There is no indication the minors are of Indian heritage or meets the criteria of *25 U.S.C.A. 1903(4)*.

**{¶45}** Appellant cites *In re L.M.*, 2024-Ohio-5549 (12th Dist.) as authority for her argument. *In re L.M.* found, "[t]here is nothing in the record demonstrating that the juvenile court made any attempt to comply with the inquiry requirements of ICWA.". *In re L.M* reasoned, "Because there is no indication in the record that the juvenile court even attempted to make the necessary ICWA inquiry, and because there is no indication that Mother was ever put on notice of the potential for ICWA to apply, we find the trial court committed plain error."

**{¶46}** This Court finds this case to be distinguishable from *In re L.M.* In this case, a dispositional hearing was held on June 7, 2023, at which Appellant was present. Appellant signed the case plan which stated that the children were not Indian children. The trial court approved and adopted the case plan and made it an order of the court.

*Judgment Entry*, p. 1. The case plan clearly states that the minor children are not protected by ICWA. *Id.*

**{¶47}** Even assuming arguendo that the trial court failed to properly inquire, based on the state of the record before us, we cannot say that but for this "plain error" the Act would have been found to apply. Because Appellant did not raise this issue in the trial court, she has forfeited all but plain error on appeal. *In re S.M.*, 2025-Ohio-34, ¶ 15 (9th Dist.). Civil plain error is "error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus. In applying the doctrine, reviewing courts "must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Id.* at 121.

**{¶48}** We do not find any plain error that seriously affected the legitimacy of the underlying proceedings or caused a manifest miscarriage of justice.

## CONCLUSION

{¶49} Based on the foregoing, Appellant's first and second assignments of error are overruled. The Judgment Entry filed in the Stark County Court of Common Pleas, Family Court - Juvenile Division, on November 5, 2024, is affirmed in all respects.

By: Montgomery, J.

Hoffman, P.J. and

King, J. concur.